**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| STORMEDIA TEXAS, LLC, | § § § § | |
| Plaintiff, | | |
| vs. | § § § | CIVIL ACTION NO. 2:07-CV-025-CE |
| COMPUSA, INC., a Delaware corporation; FUJITSU COMPUTER PRODUCTS OF AMERICA, INC., a California corporation; FUJITSU COMPUTER SYSTEMS CORPORATION, a California corporation; HITACHI GLOBAL STORAGE TECHNOLOGIES, INC., a Delaware corporation; J & R ELECTRONICS, INC., a New York corporation; SAMSUNG SEMICONDUCTOR, INC., a California corporation; SEAGATE TECHNOLOGY, a Cayman Islands corporation; SEAGATE TECHNOLOGY LLC; a Delaware limited liability company, TIGERDIRECT, INC., a Florida corporation; TOSHIBA AMERICA INFORMATION SYSTEMS, INC., a California corporation; and WESTERN DIGITAL TECHNOLOGIES, INC., a Delaware corporation, | § § § § § § § § § § § § § § § § § § | |
| Defendants. | § § | |

## DEFENDANTS' MOTION FOR SIX-MONTH STAY

Defendants CompUSA, Inc., Fujitsu Computer Products of America, Inc., Fujitsu Computer Systems Corp., Hitachi Global Storage Technologies, Inc., J & R Electronics, Inc., Samsung Semiconductor, Inc., Seagate Technology, Seagate Technology LLC, TigerDirect, Inc., Toshiba America Information Systems, Inc., and Western Digital Technologies, Inc. (collectively, "Defendants") hereby move the Court to stay the above-captioned litigation for six months pending completion of the initial stages of *inter partes* reexamination proceedings for the patent-in-suit by the U.S. Patent and Trademark Office ("PTO").

There are two notable circumstances that make a stay especially appropriate for this particular case at this particular time.

First, the precise arguments presented by the '891 patent applicant to secure allowance of its claims were **rejected** by the PTO in the context of a strikingly similar patent application filed earlier by Western Digital Corp. ("Western Digital").  **The PTO had rejected the earlier Western Digital application based on a number of critical references that were not considered by the PTO during prosecution of the '891 patent.**  Now that the PTO has been informed of these conflicting results (and the dispositive prior art), the '891 patent claims involving thin protective layers must be rejected, just as Western Digital's similar claims had been rejected years before.  Because the PTO has essentially already ruled on the very issue presented in the reexamination request, a stay in light of the reexamination proceedings will greatly simplify the issues in this case.

Second, the Federal Circuit recently has resolved an important issue of first impression involving the consequences of a failure to stay litigation pending reexamination.  *See Translogic Tech. v. Hitachi Ltd.*, 504 F.3d 1249 (Fed. Cir. 2007).  In the *Translogic* cases, the Federal Circuit affirmed a PTO reexamination judgment of invalidity in a manner that trumped a prior contrary judgment affirming validity in a district court.  Thus, a stay in this case presents no "clear disadvantage" to StorMedia, because the dispositive issue of invalidity will not be finally decided until the PTO completes its reexamination proceedings – **whether or not a stay is granted here**.  The *Translogic* case also demonstrates the gross inefficiencies that result from permitting simultaneous proceedings both in court and the PTO.  Without a stay, the parties in this case will be forced to spend thousands of hours and millions of dollars in court proceedings that **cannot** and **will not** finally resolve the dispositive question of the invalidity of the '891 patent.  In these circumstances, only a stay will satisfy Congress's stated intent that the reexamination option "reduce expensive patent litigation in U.S. district courts."  Ex. 2 (Cong. Rec. at S14720 (Nov. 17, 1999)).

Defendants propose a six-month stay of the litigation to permit the PTO to complete its initial determination on the reexamination issues that have been raised.[1]  As this litigation is still in its early stages, a limited stay will allow the PTO to provide additional guidance to simplify issues regarding the invalidity of the '891 patent, before the parties and Court become mired in exchanges on discovery, claim construction, and so forth.  If the PTO ultimately finds no questions of patentability, StorMedia will have experienced no prejudice in light of the limited time frame of the stay.  If, on the other hand, the PTO concludes that there is reason to question the validity of the '891 patent, then Defendants can petition the Court for a further stay.  This incremental approach thus fairly balances any claim of prejudice with the apparent likelihood that the PTO will cancel the asserted claims of the patent-in-suit.  Defendants therefore submit that their motion for a six-month stay should be granted.

## I.     LEGAL STANDARD

The determination whether to stay a case rests within the equitable discretion of the court, which has inherent power to control its own docket.  *Gould v. Control Laser Corp.*, 705 F.2d 1240, 1341 (Fed. Cir. 1983).  Factors that the court may consider in determining whether to grant a stay include "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex.  2005).

## II.    ARGUMENT

All three of the *Soverain Software* factors support a six-month stay in this case:

(1)     StorMedia will not be prejudiced by the proposed stay because, based on recent Federal Circuit caselaw, there will be no final resolution of StorMedia's infringement claims in any event until **after** the PTO completes its reexamination proceedings.  Thus, the stay will not

---

[1] The reexamination request is attached as Exhibit 1.  It is Defendants' understanding that two additional *inter partes* reexamination requests relating to the '891 patent will be filed within about a month.

unjustly delay final resolution of this matter. In particular, the six-month stay initially requested by Defendants is of sufficiently limited duration to avoid unduly prejudicing StorMedia.

(2) A stay will clearly simplify the issues in this case, because the reexamination request is based on references that the PTO already has determined (in another context) constitute invalidating prior art with respect to claims that are substantively identical to those of the '891 patent. Permitting the PTO to apply to the '891 patent a conclusion regarding invalidity that it already has reached in substance certainly will simplify this case.

(3) This case is still in its early stages. Discovery is far from complete and claim construction disclosures and proceedings have not yet even begun (with the Markman hearing set for roughly a year from now). There are substantial efficiencies to be gained by putting litigation activities on hold while the PTO undertakes this important invalidity analysis.

Each of these three factors is considered in turn below.

### A. A Stay Can Result In No Prejudice Because The Final Decision On The Dispositive Issue Of Invalidity Will Be Rendered By The PTO

StorMedia faces no "undue prejudice" if this case is stayed. As a preliminary matter, a six-month pause in court proceedings while the PTO considers and renders an initial determination on the pending reexamination request is an insubstantial delay that cannot constitute "undue prejudice" to StorMedia. This Court regularly has granted limited stays of this order of magnitude to allow time for the parties to receive initial guidance from the PTO on issues involving invalidity. *See, e.g.*, *Sung v. 3M Co.*, Civ. No. 2:02-cv-191-TJW (Sept. 24, 2003) (staying litigation until first office action to evaluate status of patent-in-suit); *Source, Inc. v. Amer. Express Co.*, Civ. No. 2:05-cv-364-TJW (Jan. 4, 2006) (granting initial stay for 120 days with right to "re-urge an additional stay").

More importantly, because a determination of invalidity in the reexamination proceedings before the PTO will ultimately be decisive on that issue, a stay of these court proceedings will not delay final resolution of StorMedia's infringement claims against Defendants.

The results of the recent *Translogic* litigation provide valuable guidance on the interplay between litigation and reexamination.  There, the plaintiff sued a number of defendants including Hitachi Ltd. ("Hitachi") for patent infringement in the District of Oregon on March 24, 1999.  Hitachi filed its first request for reexamination, and the court granted a stay.  Over the course of the next three years, Hitachi filed a total of five separate requests for reexamination.[2]  In December 2002, the court lifted the litigation stay, on the ground that the plaintiff "deserved its day in court, despite the possibility that the reexamination proceedings might some day produce rulings that were inconsistent with this court's rulings."  404 F. Supp. 2d 1250, 1253.

From that point on, the case in the district court and the reexamination before the PTO proceeded concurrently – albeit in opposite directions:

| *Date* | *District Court* | *PTO* |
| --- | --- | --- |
| October 2003 | Jury upholds patent-in-suit as valid | |
| March 2004 | | Examiner rejects claims under reexamination as invalid |
| February 2005 | Court grants partial summary judgment of infringement | |
| May 2005 | Jury finds Hitachi liable for induced infringement, awards $86.5 million in damages; permanent injunction entered | |
| July 2005 | | Board of Patent Appeals affirms examiner's rejections of claims as invalid |
| December 2005 | Court denies motions for judgment as a matter of law on invalidity, reject's Board's claim constructions, enters final judgment of infringement | |

---

[2] The *Translogic* case involved a series of *ex parte* reexamination proceedings, whereas the instant case involves only an *inter partes* reexamination proceeding.  Unlike *inter partes* reexamination, the *ex parte* reexamination procedure permits serial filing of multiple reexamination requests over the course of several years.

5

*Translogic*, 504 F.3d 1249, 1251.

The final rulings of the court and the Patent Board were both appealed to the Federal Circuit. Although the appeals did not initially arrive at the Federal Circuit at the same time, the Federal Circuit stayed the briefing schedule of the first case and later ordered the cases to "proceed as companion cases." Ex. 3 (Fed. Cir. Docket 2005-1387). In its briefing, Hitachi noted that the companion appeals presented "a case of first impression": "Two appeals concerning the same patent with contrary results have reached [the Federal Circuit] at exactly the same time." Ex. 4 (Hitachi App. Opening Brief) at 6. Oral argument for both appeals was conducted on the same day (April 3, 2007).

The Federal Circuit ultimately chose to give precedence to the reexamination appeal. *See* 504 F.3d at 1251. In its opinion, the Federal Circuit affirmed in every respect the Board's findings that the claims of the patent-in-suit were to be finally rejected as invalid and unpatentable. *Id.* Then, in a short unpublished opinion issued the same day, the Federal Circuit stated that, "in light of this court's decision" regarding the reexamination appeal, the district court's decision would be vacated and the case remanded for dismissal. 2007 U.S. App. LEXIS 23951 (Fed. Cir. 2007). Thus, the $86.5 million damages claim and permanent injunction imposed after multiple trials and years of costly litigation were rendered void in light of the PTO's final ruling of invalidity.

A failure to stay this case would prejudice the parties in the same manner as in the *Translogic* case. Although the plaintiff in *Translogic* successfully petitioned to get its "day in court," what it ended up getting (at an enormous price) was a judgment which, as a matter of law, could have no effect in light of the co-pending reexamination proceedings. Even Hitachi, which ultimately prevailed on appeal, was forced to wage exactly the type of lengthy and expensive patent war that Congress had intended to avoid by offering a reexamination option. Ex. 2 (Cong. Rec. at S14720 (Nov. 17, 1999)).

Given that a final determination of invalidity by the PTO will be dispositive of StorMedia's claims, the only sensible approach in this case is to issue a stay. Out of fairness to

StorMedia, Defendants request only a six-month stay at this time.  In the unlikely event that the PTO should determine that no substantial question of patentability has been raised in the reexamination request, StorMedia will then be able to continue without prejudice to prosecute its case in court.

This is clearly not a case where a stay might result in a competitive loss to the patentee in the marketplace.  To the contrary, the StorMedia entity (which consists of California attorney Peter Courture and his administrative assistant) does not even participate in the marketplace – it does not sell computers, disk drives, magnetic media or otherwise compete in any way with any of the Defendants.  Thus, a six-month stay can do StorMedia no harm.

      **B.**    **A Stay Will Simplify Issues In This Case Because The PTO Already Has Determined, In Another Context, That The References Cited In The Reexamination Request Invalidate The Claimed Invention**

In explaining why the '891 patent must be cancelled, the pending reexamination request points to a truly extraordinary circumstance:  the PTO had earlier considered – and **rejected** – the precise arguments regarding patentability that were **successfully** advanced during prosecution of the '891 patent application.  That earlier rejected application was deemed unpatentable based on certain prior art references that were never considered by the PTO during prosecution of the '891 patent.  Now, in the pending reexamination request, these previously unconsidered prior art references are presented to the PTO to show why the '891 patent is invalid.  Thus, unlike the case of an ordinary reexamination request, there is little question that these references constitute invalidating prior art, **because the PTO effectively already has made that determination**.  It follows that, in light of the PTO's past treatment of these references, a stay pending reexamination will greatly simplify the issues in question in this case.

The reexamination request sets forth the relevant facts as follows.  The original assignee of the application that became the '891 patent was an entity named United Module Corporation ("United Module").  During prosecution, United Module claimed to have invented an

7

improvement on a "protective layer" used on "magnetic recording media."[3] The alleged improvement involved using a protective layer with a particularly reduced thickness – specifically, a protective layer "less than 80 Å [angstroms]" thick.[4] Ex. 5 ('891 patent) at col. 20, line 53; *see* Ex. 6 (StorMedia Interrogatory Responses) at 8 ("Prior to the conception of the invention, it was thought that a carbon overcoat could not be produced below 10 nm [100 Å] that would serve as an effective protective layer on hard disks."). An illustration of magnetic recording media with such a "protective layer" is illustrated in Fig. 1 of the '891 patent (Ex. 5), as reproduced below:



FIG. 1

Like the '891 patent application, the application earlier filed by Western Digital claimed magnetic recording media ("magnetic disk for a hard disk drive") with a "protective layer" less than 80 angstroms thick ("having a thickness between 1 to 7 nanometers").[5] This earlier

---

[3] Magnetic recording media stores information through variations in the magnetic field of the magnetic material contained therein. *See, e.g.*, Ex. 5 ('891 patent) at col. 1, lines 57-59. In its infringement contentions, StorMedia has alleged that the magnetic recording media of the '891 patent may be found, for example, in hard disk drives such as those used in personal and laptop computers.

[4] An angstrom is a microscopic unit of distance equal to one-ten-millionth of a millimeter, or $1 \times 10^{-10}$ m.

[5] Ex. 15 (Chia Application) at 13. As noted by the '891 patent applicant during examination, one nanometer (nm) equals ten angstroms (Å). *See* Ex. 7 (Office Action dated Apr. 15, 2002) at 4. Thus, a protective layer less than 7 nm thick is, by definition, less than 70 Å thick.

application ("the Chia application") included an illustration of magnetic recording media with such a "protective layer," as reproduced below (*see* Ex. 15, Fig. 7):



Fig. 7

Both United Module and Western Digital argued to the PTO that it was the **reduced thickness** of their disclosed protective layers that imparted novelty and nonobviousness over the prior art of record.  Ex. 8 ('891 Patent Office Action Response dated April 14, 2004) at 5 (arguing that prior art "fail[s] to meet the thin film limitation of claim 1"); Ex. 9 (Chia App. Office Action Response dated Apr. 20, 2000) at 3 (arguing that prior art did "not teach or suggest the limitations of amended claim 1 [including] thickness between 1 to 7 nanometers").

In the case of the Chia application, the PTO rejected that argument, explaining that it was "prima facie obvious to minimize thickness of a protective layer." Ex. 10 (Chia App. Office Action dated June 30, 2000) at 3.  In support of this obviousness rejection, the examiner cited the "Chen" and "Eltoukhy" patents, which disclose (for example) protective carbon layers that are 25 angstroms thick.  *See, e.g.*, Ex. 11 (Chen Patent) at col. 2, lines 27-28; Ex. 12 (Eltoukhy Patent) at col. 10, line 30.  Indeed, the examiner explicitly stated that the Eltoukhy patent was not limited by its "preferred embodiment," but rather taught a range of thicknesses overlapping the claimed range.  Ex. 10 (Chia Office Action dated June 30, 2000) at 3.

By contrast, when United Module argued during the prosecution of its application that the prior art of record "fail[ed] to meet the thin film limitation of claim 1," that application was immediately allowed and issued as the '891 patent. Ex. 13 (Notice of Allowability). The prosecution of the United Module application never took into account the prior art references that the PTO explicitly had cited in rejecting the Western Digital application (Chen, Eltoukhy). The absence of that prior art made all the difference. A reasonable examiner would – and in fact, did – consider Chen and Eltoukhy to be key invalidating references in rejecting the patentability of magnetic recording media having a carbon protective layer less than 80 angstroms thick.

Thus, the reexamination request now pending before the PTO presents a unique situation that strongly favors a stay. The typical *inter partes* reexamination request (which results in cancelled or changed claims 91% of the time, *see* Ex. 14 (2007 PTO Statistics)) offers the possibility that certain pieces of prior art newly cited to the PTO will result in simplification of issues before the court. By contrast, evaluation of this reexamination request requires no such speculation, because the prior art in question has already been applied by the PTO to reject claims that are strikingly similar to those of the '891 patent. A consideration of the likely simplification of issues in this case therefore weighs heavily in favor of a stay.[6]

### C. This Case Is In Its Early Stages, As Discovery Is Far From Complete And The Claim Construction Process Has Not Yet Begun

The final factor regarding timing weighs in favor of a stay. This case is less than a year old. Fact discovery does not close until February 27, 2009. The Markman hearing is scheduled for January 2009, and claim construction disclosures are not even scheduled to begin for a number of months. This is clearly not a case where a stay is sought on the eve of trial as a delaying tactic. In short, there are substantial efficiencies still to be gained in pausing the case at this early stage, for six months, to receive guidance from the PTO on the question of invalidity.

---

[6] Chen and Eltoukhy are not the only prior art references relied upon in the pending reexamination request. Of course, the fact that there are additional invalidating references only **increases** the certainty that issues in this case will be simplified via reexamination.

### III.     CONCLUSION

A limited, initial stay of litigation proceedings at this early stage will permit the Court and the parties to benefit from the PTO's initial guidance on the invalidity issue – an issue the PTO has already considered in substance – without prejudice to StorMedia.  Indeed, since the PTO will have the final word on invalidity, a stay will not unjustly delay final resolution of StorMedia's claims.  To the contrary, a stay will avoid costly and unnecessary legal proceedings that would otherwise burden the Court and the parties, contrary to the very reason Congress chose to provide for *inter partes* reexamination in the first place.  Defendants respectfully submit that their request for a six-month stay should be granted.

Dated:  January 16, 2008

Respectfully submitted,

*/s/ Scott D. Baskin, P.C.*

Scott D. Baskin, P.C. (*pro hac vice*)
   (sbaskin@irell.com)
Lisa Sharrock Glasser (*pro hac vice*)
   (lglasser@irell.com)
David C. McPhie (*pro hac vice*)
   (dmcphie@irell.com)
IRELL & MANELLA LLP
840 Newport Center Dr., Suite 400
Newport Beach, CA 92660
Telephone:  (949) 760-0991
Facsimile:  (949) 760-5200

Melissa Richards Smith
  (melissa@gillamsmithlaw.com)
Lead Attorney
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257

ATTORNEYS FOR DEFENDANT
WESTERN DIGITAL TECHNOLOGIES,
INC.

*/s/ Herbert J. Hammond (by permission)*

Herbert J. Hammond
  (herbert.hammond@tklaw.com)
THOMPSON & KNIGHT LLP
1700 Pacific Avenue, Ste. 3300
Dallas, TX  75201
Telephone:  (214) 969-1607
Facsimile:   (214) 969-1751

ATTORNEYS FOR DEFENDANT
COMPUSA, INC.


*/s/ David E. Wang (by permission)*

David E. Wang
  (dwang@orrick.com)
ORRICK HERRINGTON & SUTCLIFFE
4 Park Plaza, Suite 1600
Irvine, CA  92614-2258
Telephone:  (949) 852-7750
Facsimile:   (949) 567-6710

ATTORNEYS FOR DEFENDANTS
FUJITSU COMPUTER PRODUCTS
OF AMERICA, INC. & FUJITSU
COMPUTER SYSTEMS CORP.


*/s/ James F. Valentine (by permission)*

James F. Valentine
  (valentinej@howrey.com)
HOWREY LLP
1950 University Avenue, 4th Floor
East Palo Alto, CA  94105
Telephone:  (650) 798-3594
Facsimile:   (650) 798-3600

ATTORNEYS FOR DEFENDANT
HITACHI GLOBAL STORAGE
TECHNOLOGIES, INC.

*/s/ John M. Guaragna (by permission)*

John M. Guaragna
  (john.guaragna@dlapiper.com)
DLA PIPER US LLP
1221 South MoPac Expressway, Suite 400
Austin, TX  78746
Telephone:  (512) 457-7125
Facsimile:   (512) 457-7001

ATTORNEYS FOR DEFENDANT
SAMSUNG SEMICONDUCTOR, INC.

*/s/ David M. Barkan (by permission)*

David M. Barkan
  (barkan@fr.com)
FISH & RICHARDSON P.C.
500 Arguello St., Suite 500
Redwood City, CA 94063
Telephone:  (650) 839-5070
Facsimile:   (650) 839-5071

ATTORNEYS FOR DEFENDANTS
SEAGATE TECHNOLOGY AND
SEAGATE TECHNOLOGY LLC

*/s/ Eric William Buether (by permission)*

Eric William Buether
  (buethere@gtlaw.com)
GREENBERG TRAURIG, LLP
2200 Ross Ave., Suite 5200
Dallas, TX  75201
Telephone:  (214) 665-3664
Facsimile:   (214) 665-5964

ATTORNEYS FOR DEFENDANT
TIGER DIRECT, INC.

*/s/ Walter Thomas Henson (by permission)*

Walter Thomas Henson
  (tomh@rameyflock.com)
RAMEY & FLOCK P.C.
100 E. Ferguson, Suite 500
Tyler, TX  75702-0629
Telephone:  (903) 597-3301
Facsimile:   (903) 597-2413

ATTORNEYS FOR DEFENDANT
J&R ELECTRONICS, INC.


*/s/ Irfan Lateef (by permission)*

Irfan Lateef
  (irfan.lateef@kmob.com)
KNOBBE MARTENS OLSON & BEAR
2040 Main Street, 14th Floor
Irvine, CA  92614-3641
Telephone:  (949) 760-0404
Facsimile:   (949) 760-9502

ATTORNEYS FOR DEFENDANT
TOSHIBA AMERICA INFORMATION
SYSTEMS

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 16, 2008, a copy of the foregoing document was caused to be hand-delivered to the office of counsel for Plaintiff, as follows:

> Dovel & Luner, LLP
> 201 Santa Monica Boulevard, Suite 600
> Santa Monica, CA  90401
> Telephone:  310-656-7066
> Facsimile:  310-656-7069

The undersigned further certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this notice was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A).

>                          */s/ Scott D. Baskin, P.C.*


**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel met and conferred on January 11, 2008, and Plaintiff opposes this motion.

>                          */s/ Scott D. Baskin, P.C.*