**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| STORMEDIA TEXAS, LLC,<br><br>                        Plaintiff,<br><br>vs.<br><br>WESTERN DIGITAL TECHNOLOGIES,<br>INC. et al.;<br><br>                    Defendants. | **CASE NO.  2:07-CV-25 (CE)**<br><br>**Jury Trial** |

**Plaintiff StorMedia Texas, LLC's opposition to
Defendant Western Digital's motion to stay pending re-examination**

**I.      Introduction.**

        Western Digital Technologies, Inc. ("Western Digital") coyly seeks an <u>indefinite</u> stay of this case pending the resolution of its prospective *inter partes* reexamination of U.S. Patent No. 6,805,891 (the "'891 patent") with the United States Patent and Trademark Office (the "PTO") by claiming that it is only requesting a "six-month stay of the litigation to permit the PTO to complete its initial determination on the reexamination issues that have been raised." Mot. at 3.  Within the proposed six-month stay, however, the PTO will not, as Western Digital claims, "provide additional guidance to simplify the issues regarding the invalidity of the '891 patent."  Mot. at 3.  In fact, the only information that the parties may reasonably expect to obtain

from the PTO within that period of time is whether it intends to reexamine the patent.[1]  And

because Western Digital intends to march back to this Court seeking an indefinite stay of the

proceeding *if*, at the end of its requested six-month stay, the PTO decides to reexamine the '891

patent, Western Digital's request is no different than a defendant that seeks to have the Court

deviate from its practice of disfavoring stays pending a reexamination by imposing an indefinite

stay.  *See Soverain Software, LLC. v. Amazon, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005)

(rejecting a rule in favor of staying patent litigation pending reexamination because the rule

would not "promote the efficient and timely resolution of patent cases").

       Western Digital, nevertheless, asks the Court to make an exception for it for three

reasons.

       *First,* Western Digital argues that a stay of this action pending its reexamination

will not prejudice StorMedia Texas because "the PTO will ultimately be decisive" on the issue of

validity and therefore "a stay of these proceedings will not delay final resolution of StorMedia's

infringement claims against Defendants."  Mot. at 4.  Western Digital contends that the Federal

Circuit's recent decision in *Translogic Technologies v. Hitachi Ltd.*, 504 F.3d 1249 (Fed. Cir.

2007) adds additional support for this commonly-raised argument because it somehow changes

the landscape regarding whether an ongoing patent litigation should be stayed pending the result

of a re-examination by the PTO.  Western Digital is wrong.

       Prior to *Translogic*, it was always the case that a reexamination *might* result in a

final decision by the PTO that the patent-in-suit was invalid, and that such a finding would result

in a plaintiff's inability to maintain its infringement suit against the defendant.  After *Translogic*,

we have the same state of affairs:  a reexamination *might* result in a final decision by the PTO

that the patent-in-suit was invalid, and that such a finding would result in a plaintiff's inability to

maintain its infringement suit against the defendant.  Merely because the court of appeal in

*Translogic* dismissed a patent suit upon affirming a PTO's finding of invalidity after a

reexamination does nothing to alter the analysis that needs to be conducted here to determine

---

[1]      Of course, the fact that the PTO may determine, at the end the six-month period, *not* to
reexamine the '891 patent, is, by itself, a basis for denying Western Digital's motion.

whether a stay is appropriate.  And, as shown below, the applicable caselaw and a balance of the relevant factors strongly favor proceeding with this litigation and denying the requested stay. *See Biax Corp v. Fujitsu Computer Sys. Corp.,* 2007 U.S. Dist. LEXIS 12973 at *1 (E.D. Tex. Feb. 26, 2007) (Ward, J.).

<u>Second</u>, Western Digital argues that a stay pending its *inter partes* reexamination will simplify the issues in this case because, unlike other defendants who Western Digital apparently believes cite weak art to the Patent Office, Western Digital claims that it has presented the PTO with a "truly extraordinary circumstance" -- prior art that the PTO has already determined to be "invalidating prior art" of the '891 patent.  Mot. at 7.  Again, Western Digital is wrong.  Indeed, the fundamental premise underlying Western Digital's entire argument -- that its current *inter partes* reexamination presents the PTO with prior art that the PTO had previously used to reject the "precise arguments regarding patentability that were successfully advanced during the prosecution of the '891 patent" -- is patently false.  As explained below, the arguments advanced by the patentee during the prosecution of the '891 patent to overcome obviousness were not merely "the reduced thickness" of the protective layer, but rather that none of the cited prior art references identified by the PTO (including the references now being presented by Western Digital in its *inter partes* reexamination), disclosed or suggested the utilization of a "highly tetrahedral amorphous carbon (*i.e.* a carbon protective layer with a $sp^3$ carbon-carbon ratio of greater than 15%) with a thickness of less than 80 Å.  *See* Dkt # 189-9, Exh. 8, p. 4-6.

<u>Third</u>, Western Digital argues that because this litigation is in its early stages, "there are substantial efficiencies to be gained by putting litigation activities on hold."  Mot. at 4. Even though this case is not in an advanced stage of litigation, that fact alone does not warrant granting a stay of the litigation.  "Although the advanced nature of a case approaching trial may weigh heavily against granting a stay, the opposite inference -- that a suit in the early stages should weigh heavily in favor of a stay -- is not true." *Sighting Sys. Instruments, LLC v. Prestige Law Enforcement, Inc.*, Case No. 05 Civ. 1560, 2006 WL 2642184, at *4 (N.D. Tex. Sept. 11,

2006) (denying a stay where "no answer or dispositive motions have been filed discovery has not yet commenced, and a trial date is nowhere in sight.").

## II. A stay of this case pending Western Digital's *inter partes* reexamination is unwarranted.

### A. Because the PTO has not yet decided to reexamine the '891 patent, Western Digital's motion should be denied because it is premature.

Apparently recognizing the fact that its request for a stay is premature, Western Digital contends that this Court "regularly" grants stays under these circumstances – *i.e.* prior to the PTO agreeing to reexamine the patent. That is not the case, and Western Digital's reliance on this Court's rulings in *Sung v. 3M Co*, Civ. No. 2:02cv191-TJW (Sept. 24, 2003), and *Source, Inc. v. American Express Co.*, Civ. No. 2:05cv364-TJW (Jan. 4, 2006), is unavailing.[2] While it is true that most requests for *inter partes* reexamination are ultimately granted, some are denied. Dkt # 187-15, Exh 14. At this point, therefore, whether there will be a reexamination of the '891 patent at all is speculative -- and cases should not be stayed on speculative grounds. *See*, *e.g.*, *Biax Corp. v. Fujitsu Computer Sys. Corp.*, No. 2:06-CV-364-TJW, 2007 U.S. Dist. LEXIS 12973, at *5 (E.D. Tex. Feb. 26, 2007) (Ward, J.) (noting that speculative facts do not support granting a stay). Accordingly, the Court should deny Western Digital's motion to stay because whether such reexamination will even take place is complete speculation.

### B. A balance of the relevant factors weighs against a stay of this case.

Western Digital's motion to stay this case must also be denied because a balance of the relevant factors favors the continued litigation of this case.

A court "has broad discretion in controlling its own docket." *Edwards v. Cass County, Texas*, 919 F.2d 273, 275 (5th Cir. 1990); *see also Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). In *Landis*, the Supreme Court held that one moving "for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." 299 U.S. at 255;

---

[2]      Unlike this case, where StorMedia Texas opposes Western Digital's request for a stay on the grounds that a stay would unduly prejudice StorMedia Texas and is not likely to simplify the issues in this case, the Court did not address any of these issues in *Sung* (joint motion to stay) or *Source, Inc.* (unopposed motion to stay).

*see also Castanho v. Jackson Marine, Inc.*, 484 F. Supp. 201, 209 (E.D. Tex. 1979).  To that end, the "burden is squarely on the party seeking the stay to show that there is a pressing need for a delay." *Castanho*, 484 F. Supp. at 209.

   While the Court has discretion to grant a stay under the appropriate circumstances, there is absolutely no obligation "to stay judicial resolution in view of [PTO] reexaminations." *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001); *see also NTP, Inc. v. Research in Motion, Ltd.*, 397 F. Supp. 2d 785, 787 (E.D. Va. 2005).  Indeed, Court's in this district have been "unwilling to adopt a *per se* rule that patent cases should be stayed during reexamination because some of the relevant claims may be affected." *Soverain Software, LLC. v. Amazon, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).  Such a *per se* rule "would not promote the efficient and timely resolution of patent cases, but would invite parties to unilaterally derail timely patent case resolution by seeking reexamination." *Id.*  Rather, the Court should "tread carefully" in determining whether a stay is necessary, "since a party has a right to a determination of its rights and liabilities without undue delay." *Tyco Healthcare Group*, 2005 U.S. Dist. LEXIS 42869, at *24; *see also Castanho v. Jackson Marine, Inc.*, 484 F. Supp. 201, 209 (E.D. Tex. 1979) ("Because each party to a lawsuit has a right to an expe[ditious] determination of his claim, . . . the district court must weigh competing interests in order to reach a fair decision.").

   In determining whether a stay is appropriate, courts generally consider: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set." *Soverain Software, LLC. v. Amazon, Inc.*, 356 F. Supp. 2d at 662.  The balance of these factors weighs against granting Western Digital's request for a stay.

1.    **The expected lengthy delay pending the decision of the *inter partes* reexamination will cause StorMedia Texas undue prejudice.**

Confronted with a request to stay pending an *ex parte* reexamination prior to the PTO issuing any Office Actions, this Court in *Biax Corp. v. Fujitsu Computer Systems Corp.* determined that the typical *ex parte* reexamination took "an average of 22.6 months to complete and the appellate review could take an additional 24 months." 2007 U.S. Dist. LEXIS 12973, at *4. As a consequence, the Court denied the request to stay, holding that "the potential delay for [such] an indefinite period" pending the *ex parte* reexamination "would likely prejudice" the patentee plaintiff. *Id.*

Western Digital contends that StorMedia Texas will not suffer undue prejudice articulated in *Biax* because it is only requesting "a six-month pause" in this case. Western Digital is wrong. At the end of the six-month stay that Western Digital seeks, one of two things will occur – each of which will result in unnecessary delay and undue prejudice to StorMedia Texas.

*First*, at the end of the six-month period, the PTO may decide *not* to reexamine the '891 patent, at which time the parties would have sat around for six critical months for nothing. There is no question that "[t]he risk of substantial prejudice increases with the passage of time." 6 Wright & Miller, Federal Practice and Procedure § 1488 at 439 (1971). A six month delay that results in the PTO refusing to reexamine the '891 patent would unfairly deny StorMedia Texas the opportunity to continue to timely gather evidence in its effort to prosecute its infringement action against Western Digital. Such a delay can only result in substantial prejudice to StorMedia Texas.

*Second*, the more likely result at the end of the six-month period is that the PTO will decide to reexamine the '891 patent, at which time, as Western Digital admits, Western Digital will return to this Court seeking an indefinite stay of these proceedings pending the resolution of that reexamination. Granting Western Digital's request for a stay under these circumstances will cause StorMedia Texas undue prejudice for the following reasons.

To begin, the expected period of delay for the completion of Western Digital's *inter partes* reexamination is substantially longer than the anticipated delay for the *ex parte* reexamination that compelled the rejection of the request to stay in *Biax*. The Reexamination Filing Data provided by Western Digital reflects that the median pendency of *inter partes* reexaminations is 29.7 months (much longer than the 22.6 months for the completion of *ex parte* reexaminations). *See* Dkt # 187-15, Exh 14. This statistic is somewhat misleading, however, because it corresponds only to the seven *inter partes* reexaminations that were completed in the first seven years that the process was available. *Id.* The chart shows, rather, that there were twenty-six *inter partes* reexaminations filed by fiscal year 2003, and that the substantial majority of those requests were still not completed well into fiscal year 2007. *See id.* In other words, over half of the petitions had been pending for over four years and were still not resolved. Accordingly, PTO statistics indicate that an *inter partes* reexamination can be expected to take well over 48 months to be resolved by the PTO.

The lengthy delay that is certain to occur as a result of an *inter partes* reexamination is exacerbated because of the unique nature of that proceeding. In the context of an *ex parte* reexamination, only the patentee has the right to appeal an adverse decision of the PTO. *See* 35 U.S.C. §306. Thus, the delay caused by a potential appellate review can be triggered only when the PTO rejects some or all of the patent's claims during an *ex parte* reexamination.[3] In an *inter partes* reexamination, on the other hand, both the patentee *and* the third party requester (*e.g.* Western Digital) have the right to appeal an adverse decision. *See* 35 U.S.C. §315(b). The anticipated 48 month delay caused by an *inter partes* reexamination is therefore likely to be increased because the appellate process is more likely to be triggered regardless of the PTO's ultimate decision on reexamination. This means that if, after a multi-

---

[3]     Even so, many courts have given weight to the possibility of additional appellate delay in the *ex parte* context. *See Biax*, 2007 U.S. Dist. LEXIS 12973, at *4; *NTP, Inc.*, 397 F. Supp. 2d at 788 ("Reality and past experience dictate that several years might very well pass from the time when a final office action is issued by the PTO to when the claims are finally and officially 'confirmed' after appeals.").

year reexamination process, the PTO confirms all claims of the '891 patent, Western Digital will be entitled to engage in another multi-year process appealing the PTO's decision to the Board of Patent Appeals and beyond.  Assuming, therefore, as StorMedia Texas explains below, that every asserted claim of the '891 patent is ultimately confirmed, completion of the *inter partes* reexamination process can realistically be expected to take more than <u>six years</u>.  "This factor weigh[ed] strongly against a stay" in *Biax*, and it should weigh even more strongly against a stay in this case.  2007 U.S. Dist. LEXIS 12973, at *5.

The Federal Circuit's decision in *Translogic* does not change this result.  Indeed, if the rule that Western Digital suggests is mandated by the *Translogic* opinion were adopted, every pending patent infringement lawsuit would have to come to a halt merely because of the filing of a request for reexamination – a result that is completely at odds with logic, fairness, and this Court's longstanding precedence.  Moreover, because it is more than likely that Western Digital's request for reexamination will *not* result in the invalidation of any of the asserted claims of the '891 patent, it is more likely that the final decision at the PTO level would be consistent with the expected finding of validity in this case.  A stay of this litigation pending the lengthy resolution of the PTO *inter partes* reexamination process is simply unwarranted here.

In addition to causing the "fundamental harm of delaying final resolution," (*see Biax*, 2007 U.S. Dist. LEXIS 12973 at *4), staying this case for an indefinite period of time prejudices StorMedia Texas' ability to fairly prosecute its patent-infringement action when the stay is finally lifted.  Courts have routinely recognized that "crucial witnesses are more likely to be located if discovery is allowed to proceed now, rather than later." *Anascape, Ltd. v. Microsoft Corp.*, 475 F. Supp. 2d 612, 617 (E.D. Tex. 2007) (Clark, J.).  Given the very real possibility that "witnesses may become unavailable, their memories may fade, and evidence may be lost while the PTO proceeding takes place," *Gladish v. Tyco Toys, Inc.*, No. S-92-CV-1666, 1993 U.S. Dist. LEXIS 20211, at *5-*6 (E.D. Cal. Sept. 16, 1993), StorMedia Texas would "be at a severe tactical disadvantage if the entire case were stayed" pending a reexamination process that might well take more than six years to complete.  *See Anascape*, 475 F. Supp. 2d at 617.

### 2.      A stay will not simplify the issues at trial.

Western Digital makes one argument in support of its claim that a stay of this litigation pending its *inter partes* reexamination will simplify the issues at trial.  Western Digital contends that it has now presented the PTO with two prior art references that (i) were not presented to the PTO during the prosecution of the '891 patent and (ii) had earlier been considered and relied upon by the PTO to reject claims "in the context of a strikingly similar patent application filed earlier by Western Digital."  Mot at 2 (the "Chia application").  The "striking similarity" identified by Western Digital between the arguments presented during the prosecution of the Chia application and those presented during the prosecution of the '891 patent is that "[b]oth United Module and Western Digital argued to the PTO that it was the **reduced thickness** of their disclosed protective layers that imparted novelty and nonobviousness over the prior art of record."  Mot. at 9 (emphasis in the original).

It is unlikely that the claims of the '891 patent will emerge from Western Digital's *inter partes* reexamination changed in any material way for the following reasons:

<u>First</u>, according to Western Digital, consideration of the Chen and Eltoukhy patents by the PTO during its *inter partes* reexamination will likely lead to an invalidation of the '891 patent because those references disclosed "protective carbon layers that are 25 angstroms thick."  Mot. at 9.  The failure to disclose the Chen and Eltoukhy references to the PTO during the prosecution of the '891 patent will not result in any change of the asserted claims of the '891 patent because those references are merely cumulative to the prior art already presented to the PTO and are therefore immaterial.  *Engel Indus. v. Lockformer Co.*, 946 F.2d 1528, 1534 (Fed. Cir. 1991) ("When a reference is cumulative to other prior art that was before the examiner, the element of materiality is not established. . .").  Specifically, during the prosecution of the '891 patent, the patent examiner reviewed and considered the Nakayama et al. patent, which, like the Chen and Eltoukhy references, disclosed a carbon layer with a range of thickness overlapping the claimed range.  Indeed, with respect to this patent, United Module "concede[d] that the Nakayama et al. patent does describe a plasma polymerized film consisting of carbon and

hydrogen having a thickness of 3Å to 15Å.  *See* Dkt # 187-9, Exh. 8, p. 5.  Despite the PTO's consideration of this art, the '891 patent was issued.

  *Second*, Western Digital's claim that United Module and Western Digital made the "precise arguments" that were "rejected" during their respective patent prosecutions (Mot. at 2) willfully ignores the express statements made during the prosecution of the '891 patent that clearly demonstrates that the '891 patent's invention was much more than the "reduced thickness" of the carbon layer.  For example, with respect to one prior art reference identified by the PTO (the Veerasamy Dissertation), United Module argued:  "In particular, the Veerasamy reference provides no reasonable expectation of success in growing such ***tetrahedral amorphous cabon thin films*** as this reference indicates that the thinnest films promote the highest forms of $sp^2$ carbon-carbon bonding."  *See* Dkt # 187-9, Exh. 8, p.5 (emphasis added).  United Module continued:  "Applicants request, if the present rejection is maintained, that the Examiner disclose where the reference teachings themselves would motivate one of ordinary skill to combine these teachings to recognize the use of ***highly tetrahedral amorphous carbon*** having a thickness of less than 80 Å as a protective layer in a magnetic recording medium."  *Id*. (emphasis added).

  Key to the '891 patent's invention, and deliberately ignored by Western Digital, is the fact that the inventors of the '891 patent had uncovered a way to develop a carbon protective layer that was not only thin, but also had diamond-like (*i.e.* highly tetrahedral) qualities that were sufficiently continuous and smooth even at a thinness of 2-3 nanometers.  Although StorMedia Texas readily disclosed the true nature and importance of this aspect of its invention in its Interrogatory Responses, Western Digital conspicuously failed to mention it.  Specifically, StorMedia Texas stated in its Interrogatory Responses:  "Prior to the conception of the invention . . . it was thought that deposition of carbon atoms using conventional methods would result in an island close, so that relatively large holes or areas of discontinuity would exist until the film reached about 10 nm . . .  Veerasamy knew Weiler and knew that Weiler had been working on a different process to ***create carbon films that had a high percentage of $sp^3$ carbon-carbon bonds and, therefore, diamond-like qualities*** . . . Weiler brought to the problem a different theoretical

understanding about what should be possible . . . The inventors eventually realized that Weiler's process would avoid the island close phenomenon and would avoid the problem of excessive macroparticles.  The inventors eventually realized that one should be able to use Weiler's process to deposit a diamond-like carbon overcoat layer on a magnetic disk that is sufficiently continuous and smooth even when it is less than 10 nm in thickness, in fact, as thin as 2-3 nm.  If so, ***this layer would have all of the properties of the asserted claims, including an sp³ carbon-carbon content in excess of 35% (even excess of 70%), and a density in excess of 2.5 g/cm3***.  *See* Dkt # 187-7, p. 8-9 (emphasis added).

Accordingly, it is highly unlikely that the claims of the '891 patent will emerge from any reexamination changed in any material way.  The references cited by Western Digital present no different issue than the prior art already considered by the Patent Office during the prosecution that resulted in the issuance of the '891 patent.  Moreover, because the references cited by Western Digital fail to disclose or address the true invention of the '891 patent, a reexamination in light of these references is not likely to change the claims of the '891 patent or to simplify the issues in this case.

The Patent Office's own statistics belie Western Digital's claim that the reexamination will simplify the issues in this case.  Although the PTO statistics cited by Western Digital purport to show that *inter partes* reexamination requests resulted in cancelled or changed terms 91% of the time, this statistic is misleading because it reflects only the 11 *inter partes* reexaminations completed in the first seven years that the process was available.  *See* Dkt. No. 187-15, Exh. 14.  A sample size of eleven cases is simply too small to be significant.  It is likely more fair—and surely more relevant to the present motion—to focus on the fact that, as of September 2007, the 261 *inter partes* reexaminations undertaken by the PTO had resulted in only <u>nine</u> certificates canceling claims. *Id.*  These statistics present a powerful argument for denying Western Digital's motion to stay, not for granting it.

<u>*Third*</u>, Western Digital's *inter partes* reexamination will not likely result in a simplification of issues in this case because Western Digital is the only party to the

reexamination, and while Western Digital would be estopped in this action from making the same arguments made to the PTO, nothing would prevent the other defendants in this litigation from doing so.  *See* 35 U.S.C. §315(c) (estopping only the third-party requester from later asserting the invalidity of the claims at issue in the reexamination).  Because all of the defendants would not be estopped from rearguing the invalidity positions taken by Western Digital in the reexamination, it is unlikely that the issues of this case would be simplified by a stay.  *See Texas. Mp3 Techs. v. Samsung Elecs. Co.*, No. 2: 07-CV-52-TJW, 2007 U.S. Dist. LEXIS 80392 at *5 (E.D. Tex. Oct. 30, 2007) ("Because all of the defendants would not be estopped from rearguing the invalidity positions taken by Apple in the reexamination, it is unlikely that the issues of this case would be simplified by a stay.").

**3.      The stage of litigation does not favor a stay.**

Although this case may be in its relatively early stages, that fact in itself is no reason to grant a stay. *See Sighting Sys. Instruments, LLC v. Prestige Law Enforcement, Inc.*, No. 3:05-CV-1560-G, 2006 U.S. Dist. LEXIS 64698, at *11 (N.D. Tex. Sept. 11, 2006) ("Although the advanced nature of a case approaching trial may weigh heavily against granting a stay, the opposite inference—that a suit in the early stages should weigh heavily in favor of a stay—is not true."); *see also Biax*, 2007 U.S. Dist. LEXIS 12973, at *6 (denying stay where case was in its early stages).  Any other rule would send the unfortunate message to patent infringers that whenever they are sued for infringement, they may secure a multi-year reprieve from accounting for their infringing activities simply by filing a quick request for reexamination with the PTO. Accordingly, the mere fact that this case is not in the advanced stages of the litigation does not outweigh the fact that StorMedia Texas will suffer undue prejudice from an indefinite delay and a reexamination by the Patent Office will not simplify the issues in this case.

**III.      Conclusion.**

For the reasons stated above, StorMedia Texas requests that this Court deny Western Digital's motion to stay this case pending the outcome of the requested *inter partes* reexamination of the '891 patent.

Dated January 28, 2008                    Respectfully submitted,

                                          STORMEDIA TEXAS, LLC

                                          By: /s/ Julien A. Adams

                                                  S. Calvin Capshaw
                                                  State Bar No. 03783900
                                                  Elizabeth L. DeRieux
                                                  State bar No. 05770585
                                                  Brown McCarroll, L.L.P.
                                                  11217 Judson Road, Suite 220
                                                  Longview, TX 75601
                                                  Telephone: (903) 236–9800
                                                  Facsimile: (903) 236-8787
                                                  Email ccapshaw@mailbmc.com
                                                  Email: ederieux@mailbmc.com

                                                  Franklin Jones, Jr.
                                                  State Bar No. 00000055
                                                  Email: maizieh@millerfirm.com
                                                  Jones & Jones, Inc., P.C.
                                                  201 W. Houston St.
                                                  P.O. Drawer 1249
                                                  Marshall, TX 75670
                                                  Telephone: (903) 938–4395
                                                  Facisimile: (903) 938–3360

                                                  Otis W. Carroll, Jr.
                                                  State Bar No. 03895700
                                                  Email: fedserv@icklaw.com
                                                  Ireland Carroll & Kelley, P.C.
                                                  6101 S Broadway, Suite 500
                                                  Tyler, TX 75703
                                                  Telephone: (903) 561–1600
                                                  Facsimile: (903) 581–1071

                                                  Robert Christopher Bunt
                                                  State Bar No. 00787165
                                                  Email: rcbunt@pbatyler.com
                                                  Robert M. Parker
                                                  State Bar No. 15498000
                                                  Email: rmparker@pbatyler.com
                                                  Charles Ainsworth
                                                  E-mail: charley@pbatyler.com
                                                  Parker, Bunt & Ainsworth, P.C.

100 East Ferguson, Ste. 1114
Tyler, TX 75702
Telephone: (903) 531–3535
Facsimile: (903) 533–9687

Gregory S. Dovel
Cal. State Bar No. 135387
Julien A. Adams
Cal. State Bar No. 156135
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone: (310) 656–7066
Facsimile: (310) 657–7069
Email: greg@dovellaw.com

ATTORNEYS FOR PLAINTIFF,
STORMEDIA TEXAS, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 28th day of January, 2008, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ Julien A. Adams
Julien A. Adams