# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| STORMEDIA TEXAS, LLC, | |
| Plaintiff, | |
| | CASE NO. 2:07-CV-25 (CE) |
| vs. | **Jury Trial Demanded** |
| COMPUSA, INC., a Delaware corporation; FUJITSU COMPUTER PRODUCTS OF AMERICA, INC., a California corporation; FUJITSU COMPUTER SYSTEMS CORPORATION, a California corporation; HITACHI GLOBAL STORAGE TECHNOLOGIES, INC., a Delaware corporation; J&R ELECTRONICS, INC., a New York corporation; SAMSUNG SEMICONDUCTOR, INC., a California corporation; SEAGATE TECHNOLOGY, a Cayman Islands corporation; SEAGATE TECHNOLOGY LLC; a Delaware limited liability company; TIGERDIRECT, INC. a Florida corporation; TOSHIBA AMERICA INFORMATION SYSTEMS, INC., a California corporation; and WESTERN DIGITAL TECHNOLOGIES, INC., a Delaware corporation; | |
| Defendants. | |

**Plaintiff's Surreply to Defendants' Motion for Six Month Stay**

In its Reply, Defendants chose to ignore as "irrelevant" StorMedia Texas' arguments that Defendants' motion coyly seeks an <u>indefinite</u> stay of this case, asserting that StorMedia Texas' opposition "rests upon the false assumption that Defendants' motion is actually seeking an 'indefinite stay' of six years or more."  Reply at 2.  Indeed, Defendants continue to insist that they only want to stay this case for six months.  The veracity of Defendants' position is quickly called into question, however, because Defendants' entire argument for this "brief stay" is premised on its view that such a stay would "unquestionably help explain and simplify issues regarding the '891 patent." Reply at 1.

This argument is specious and quickly falls apart because, as StorMedia Texas pointed out in its opposition, and as Defendants concede in their reply, the only substantive events that are likely to take place within that six month window are:  (i) the PTO examiner may issue its initial take on whether the request for reexamination raises a "substantial new question of patentability";[1] (ii) the patent holder may submit a written response to the PTO examiner's initial take regarding patentability; and (iii) the third party requester may file written comments to the PTO.  Reply at 5, n. 4.  At the end of this six month process, there will simply be ***no conclusions*** of the PTO that the parties to this action can present to this Court that will "be a significant asset for the Court and the parties to this lawsuit."  Reply at 5.

So the question remains: After the parties have engaged in this initial process and the six month period is up, then what?  The answer to this question is obvious and readily explains why StorMedia Texas' arguments are not "irrelevant," and why this Court must absolutely consider Defendants' request to stay this case for six months to be nothing more than a crafty way of seeking an <u>indefinite</u> stay of these proceedings pending the conclusion of its *inter partes* request for reexamination.

---

[1]  In issuing this statement, the typical examiner simply regurgitates the arguments presented by the third party requester in the request for reexamination.

**A.      The expected lengthy delay pending the decision of the *inter partes* reexamination will unduly prejudice StorMedia Texas.**

The statistically likely result is that at the end of the six month period, the PTO will decide to reexamine the '891 patent.  And if, according to Defendants, the PTO is the best place to resolve their newly raised issues of patentability, the undeniable reality is that Defendants will have to return to this Court seeking to delay these proceedings until the PTO concludes the *inter partes* reexamination process.[2]  In determining whether Defendants' claimed request for a "six month stay" will prejudice StorMedia Texas, these realities cannot be dismissed or ignored.  Nevertheless, Defendants chose to ignore the fact that the PTO statistics indicate that an *inter partes* reexamination can be expected to take well over 48 months to be resolved by the PTO. *See* Dkt # 187-15, Exh 14.  Defendants also fail to rebut the fact that, because both the patentee *and* the third party requester have the right to appeal an adverse decision in an *inter partes* reexamination (*See* 35 U.S.C. §315(b), the anticipated 48 month delay will likely be increased, and the completion of that reexamination process can realistically be expected to take more than six years.

In *Biax Corp. v. Fujitsu Computer Systems Corp.*, 2007 U.S. Dist. LEXIS 12973, at *4 (E.D. Tex. Feb. 26, 2007) (Ward, J.), this Court determined that the potential 22 to 24 month delay pending an *ex parte* reexamination "would likely prejudice" the patentee plaintiff.  *Id.*  There is no question that the potential two to six year delay caused by the Defendants *inter partes* reexamination would yield the same prejudicial result.

---

[2]      Indeed, if this Court were to grant Defendants' six month stay and Defendants did not return to request to indefinitely continue that stay if the PTO decided to reexamine the '891 Patent, then the six month stay -- in which the parties sat around doing nothing and there was no substantive decision made about the validity of the patent -- would have been a complete waste of critical time and opportunity for StorMedia Texas to continue to timely gather evidence in its effort to prosecute its infringement action against Defendants.

**B.      Defendants' argument regarding "simplification of issues" is without merit.**

Defendants' claim that the PTO's reexamination will simplify the issues is completely wrong.

In its opposition, StorMedia Texas demonstrated that the PTO's reexamination is not likely to result in any changes to the claims of the '891 Patent because the arguments made by the patentee during the prosecution of the '891 patent were different than those made during the prosecution of the Chia application. Specifically, unlike the arguments made in the Chia application, the patentee's argument during the '891 prosecution was not merely based on "the reduced thickness" of the protective layer, but rather on the fact that none of the cited prior art references identified by the PTO (including the Chen and Eltoukhy references now cited by Defendants in their *inter partes* reexamination) disclosed or suggested the use of a "highly tetrahedral amorphous carbon" (*i.e.* a carbon protective layer with a sp$^3$ carbon-carbon ratio of greater than 15%).

To rebut this fatal distinction, Defendants only argument is that StorMedia Texas is making a "complete reversal of the view of the patent it as taken from the outset of the case." Reply at 3. In fact, Defendants claim to be astounded by the fact that StorMedia Texas is asserting that the '891 patent "involves 'much more' than just reduced thickness." Reply at 4. What is astonishing, however, is Defendants' ability to willfully ignore the express statements made by StorMedia Texas in the same documents on which Defendants rely that demonstrate that Defendants know of StorMedia Texas' position.

The following facts were disclosed to Defendants from the beginning of the case, and they are entirely consistent with the position taken by StorMedia Texas now:

- Defendants knew from the outset of the case that an express limitation of the asserted claims in the '891 patent is that the protective layer be comprised of a "**highly tetrahedral amorphous carbon**" (*See* Defendants' Exh. 5, Col. 20:53-54) (emphasis added);

- In its infringement contentions, StorMedia Texas disclosed that it would have to establish that the protective layer was comprised of a high tetrahedral amorphous carbon, and specifically disclosed what that term meant: "In this context, 'highly tetrahedral amorphous carbon' refers to amorphous carbon material that has more than about 15% $sp^3$ carbon-carbon bonds" (*See* Defendants' Exh. 16 at 91); and

- In its Interrogatory Responses, StorMedia Texas disclosed to Defendants that the key to the invention of the '891 patent is that it disclosed a process to "***create carbon films that had a high percentage of $sp^3$ carbon-carbon bonds and, therefore, diamond-like qualities***" (*See* Dkt # 187-7, p. 8-9 (emphasis added)).

StorMedia Texas' claim that '891 patent's invention is much more than the "reduced thickness" of the carbon layer is certainly not new. It is not a "complete reversal." And it just happens to be true.

Defendants know that in order to establish that their recording media infringes the asserted claims of the '891 patent, StorMedia Texas will have to prove that the carbon protective layer not only has a certain thickness, but also that it is "highly tetrahedral" (*i.e.* that is has a certain percentage of $sp^3$ carbon-carbon bonds). And Defendants also know that when StorMedia Texas served its infringement contentions in this case, it specifically alleged facts to show that Defendants' recording media satisfied that limitation. Nevertheless, in their reply, Defendants attempt to mislead this Court by citing to StorMedia Texas' infringement contention regarding claim 2 of the '891 patent as proof that StorMedia Texas only referred to the thickness of the carbon layer, and in so doing, <u>conveniently uses ellipses to deliberately withhold from the Court</u> the key words in StorMedia Texas' contention that clearly shows that StorMedia Texas was primarily

referring to the "highly tetrahedral" limitation.  Reply at 3.  Properly quoted, StorMedia

Texas stated:  "the only practical way to make a protective layer for a hard disk less than

50 Å is by using ***highly tetrahedral amorphous carbon*** that includes more than about

35% sp³ carbon-carbon bonds.  (*See* Defendants' Exh. 16 at 93).

        Accordingly, the pending *inter partes* reexamination will not simplify the

issues in this case because it is highly unlikely that the claims of the '891 patent will

emerge from any reexamination changed in any material way.  The references cited by

Western Digital present no different issue than the prior art already considered by the

Patent Office during the prosecution that resulted in the issuance of the '891 patent.  And

the references cited by Western Digital fail to disclose or address the true invention of the

'891 patent.

      **C.**    **The stage of litigation does not favor a stay.**

        Because (i) the expected length of the delay of this case pending the *inter*

*partes* reexamination will unduly prejudice StorMedia Texas and (ii) the reexamination

will not simply any of the issues in this case because it will unlikely result in any of the

asserted claims being changed in any material way, Defendants' request for a stay must

be rejected, even though this case may be in its relatively early stages.  *See Sighting Sys.*

*Instruments, LLC v. Prestige Law Enforcement, Inc.*, No. 3:05-CV-1560-G, 2006 U.S.

Dist. LEXIS 64698, at *11 (N.D. Tex. Sept. 11, 2006) ("Although the advanced nature of

a case approaching trial may weigh heavily against granting a stay, the opposite inference

- that a suit in the early stages should weigh heavily in favor of a stay - is not true."); *see*

*also Biax Corp. v. Fujitsu Computer Systems Corp.*, 2007 U.S. Dist. LEXIS 12973, at *6

(E.D. Tex. Feb. 26, 2007) (Ward, J.) (denying stay where case was in its early stages).

      **D.**    **Conclusion.**

      The Court should deny Defendants' motion to stay this case pending the outcome

of the requested *inter partes* reexamination of the '891 patent.

Dated:  February 14, 2008              Respectfully submitted,

By:  /s/ Julien A. Adams

Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Brown McCarroll, L.L.P.
1127 Judson Road, Suite 220
Longview, TX 75601
Telephone:  (903) 236-9800
Facsimile:  (903) 236-8787
Email:  ccapshaw@mailbmc.com
Email:  ederieux@mailbmc.com
Email:  aspangler@mailbmc.com

Franklin Jones, Jr.
State Bar No. 00000055
Jones & Jones
201 W. Houston St.
PO Drawer 1249
Marshall, TX 75670
903-938-4395
Fax: 903-938-3360
Email: maizieh@millerfirm.com

Otis W Carroll, Jr.
State Bar No. 03895700
Ireland Carroll & Kelley
6101 S. Broadway, Suite 500
Tyler, TX 75703
903-561-1600
Fax: 903-581-1071
Email: fedserv@icklaw.com

Robert Christopher Bunt
State Bar No. 00787165
Robert M Parker
State Bar No. 15498000
Parker & Bunt, P.C.
100 East Ferguson, Ste. 1114
Tyler, TX 75702
Telephone:  903/531-3535
Facsimile: 903/533-9687
Email: cbunt@cox-internet.com

6

Email: rmparker@cox-internet.com

Gregory S. Dovel
CA State Bar No. 135387
Julien A. Adams
CA State Bar No. 156135
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Telephone:  310-656-7066
Facsimile:  310-657-7069
Email:  greg@dovellaw.com
Email:  julien@dovellaw.com

**Attorneys for Plaintiff STORMEDIA
TEXAS, LLC**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 14th day of February, 2008, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ Julien A. Adams
Julien A. Adams